## 41735. BUTLER v. THE STATE.
(332 SE2d 654)

MARSHALL, Presiding Justice.

The appellant, Ronald David Butler, and two co-defendants, Bruce Edward Gurvin and Anthony Terrell Head, were indicted for the murder and armed robbery of Henry Ballard. The jury returned a verdict finding the appellant guilty of both charges. At the sentencing phase, the jury returned the death sentence, finding that the murder was committed while the offender was engaged in the commission of another capital felony. OCGA § 17-10-30 (b) (2). The jury also found that the offenses of murder and armed robbery were outrageously and wantonly vile, horrible and inhuman in that they involved torture and an aggravated battery to the victim. OCGA § 17-10-30 (b) (7). Subsequently the appellant was given the death penalty for the murder conviction, and he was sentenced to life imprisonment for the armed robbery conviction. This case is here on direct appeal, for review under the Unified Appeal Procedure (252 Ga. A-13 et seq.), and for mandatory review of the death penalty imposed. For reasons which follow, we reverse the convictions and sentences, and we remand for further proceedings.[1]

In the early morning hours of October 18, 1983, the victim, Henry Ballard, who was the service station attendant at a Thoni service station on Candler Road in Decatur, Georgia, was found in a chair inside the back portion of the service station. This portion of the service station had been converted into a residence for Henry Ballard and Phyllis Humble, who was his girl friend. The victim, Ballard, was found bleeding profusely from the head and neck area, and he was pronounced dead. A large stick and a broken pot, both of which had blood stains on them, were recovered near the victim's body. The following day, a $300 loss from the robbery was reported.

On October 24, a man named Stephen Tiller called the DeKalb County Police Department and gave the police officer with whom he spoke the name of Russell O'Neal Thomas. Tiller and Thomas both came to the police department, and Investigator John Cunningham interviewed both of them. Thomas stated that on October 22 he had been speaking with the appellant, and the appellant told Thomas in a bragging fashion that he, Head, and Gurvin had committed the murder at the Thoni station. Thomas related a number of details the appellant had told him concerning the crimes. According to Investigator Cunningham, these details were so precise that the information had

---

[1] The murder occurred on October 18, 1983. The date of conviction was May 4, 1984. The notice of appeal was filed on October 12, 1984. The transcript was filed on November 16, 1984. The appeal was docketed in this court on January 7, 1985. The case was argued on February 5, 1985.

to have come from a person who was present at the scene of the crimes. Investigator Cunningham checked the backgrounds of Tiller and Thomas and determined that they had no arrest records. He then obtained arrest warrants for the appellant, Gurvin, and Head.

The appellant was arrested at 11:00 p.m. on October 24, 1983, and he was taken to police headquarters for questioning. After being informed of a statement from co-defendant Gurvin implicating the appellant in the crimes, the appellant gave a statement to the police admitting that he, Gurvin, and Head had robbed the Thoni station and killed the victim Ballard.

More specifically, the appellant stated that: He approached the victim, asked him for a pack of Kool cigarettes, and then hit him in the stomach with his fist. Head and Gurvin then pulled the victim into the back room and put him in a chair. Gurvin then picked up the stick and began hitting the victim in the head with it. The appellant got the keys to the safe, opened the safe, and took out two envelopes containing money. The appellant had a metal object from a telephone pole, i.e., a telephone spike, in his pocket. Head took the spike, and he and Gurvin began hitting the victim in the head with it. The appellant then got a knife and stabbed the victim in the chest with it. The appellant and the two co-defendants left the station and split the money, which was over $90 each. The appellant further stated that he knew that what he had done was wrong, that it had been on his conscience, and that he was sorry for what he had done.

After being questioned by police, co-defendant Gurvin had pointed out a vacant lot to police investigators near the scene of the crime. Gurvin told the police that he and his accomplices had disposed of the knife, telephone spike, and safe keys in this lot after the crimes had been committed. The knife, telephone spike, and keys were recovered by the police from this vacant lot. Type A blood was found on the butcher knife, which was the same type blood as the victim's. A small quantity of what could have been a blood stain was found on the telephone spike. Dr. Larry Peterson, a microanalyst from the State Crime Laboratory, testified that hair found on the knife had the same microscopic characteristics as hair of the victim.

Charles Dukes, whose residence is near the Thoni station in Decatur, testified that on the day before the homicide, the appellant and the two co-defendants were at the witness' house, and he overheard them talking about robbing somebody and beating him to death.

Gurvin pleaded guilty to the charges of armed robbery and murder, and he received two consecutive life sentences.[2] He testified re-

---

[2] Charges against co-defendant Head have been dismissed, because the only evidence against him consists of co-defendant Gurvin's testimony.

luctantly on behalf of the state. He testified that the appellant suggested to him and Head that they rob the Thoni station, and that the appellant stated that he might have to kill the victim because the victim knew the appellant. Gurvin testified that he did not know the victim. Gurvin further testified that it was the appellant who had hit the victim with the telephone spike and the stick. In material part, Gurvin's remaining testimony was consistent with Charles Dukes' testimony concerning the appellant's, Gurvin's, and Head's conversation at Duke's house; and Gurvin's remaining testimony was also consistent with the appellant's statement as to the facts of the criminal spree, including the fact that the appellant had stabbed the victim in the chest.

The victim's girl friend, Phyllis Humble, was initially a suspect because of her violent relationship with the victim, which included a prior incident in which she had stabbed the victim in the abdomen. The evidence as to Humble showed that during the nine months prior to the victim's death, he and Humble had engaged in two violent confrontations. In January of 1983, Humble stabbed the victim while he was reclining on a couch at the Thoni station after they had had an argument. In September of 1983, during the course of an argument Ballard had threatened to kill Humble and he threw a hammer through the rear window of her car. There was also testimony by Humble that the victim had beaten her "quite a while prior to [the homicide]." The evidence as to Humble further shows that she had been with the victim during the days immediately preceding the murder/armed robbery, although at the time these crimes took place she was at work. Following commission of the crimes, Humble turned over to the police the victim's wallet and $260 in cash.

One of the defense witnesses was Michael Miller, who testified that on October 3, 1983, 10 days before the crimes in issue in this case, he and Larry West had robbed the Thoni station pursuant to a plan devised by the victim to defraud the station by staging the robbery. Both Miller and West were convicted of armed robbery for this offense.

During the course of the trial, the trial judge struck the evidence concerning Phyllis Humble, the evidence showing the prior robbery of the victim at the Thoni station, and other evidence showing that the victim had been on probation for a criminal offense prior to his death. The appellant complains of the action of the trial judge in striking this evidence.[3] We conclude that the trial judge did err in striking the

---

[3] In addition to this complaint, the appellant has filed 30 other enumerations of error. As to these, we conclude as follows: (1) The trial judge did not err in ruling that there existed probable cause for the appellant's arrest. In determining whether probable cause for the arrest existed the issuing magistrate was authorized to rely on oral testimony of the police

evidence as to Humble, but not the remaining evidence.

The question presented is whether the evidence as to Humble was inadmissible on the ground that it was irrelevant. In resolving the question of whether this evidence was relevant, we must determine whether it tended to establish the possibility that Humble was responsible for the commission of the crimes and thereby tended to establish the appellant's innocence. Although the question is close, we conclude that the evidence as to Humble did tend to establish the possibility that Humble was responsible for committing the crimes. Therefore, this evidence was relevant and admissible.

As to the question concerning the admissibility of the evidence that the victim was on probation, the general rule in Georgia is that the character of the victim is irrelevant and inadmissible in a murder trial. OCGA § 24-2-2; *Wiseman v. State*, 249 Ga. 559 (6) (292 SE2d 670) (1982) and cits.; *Bryant v. State*, 249 Ga. 242 (2) (290 SE2d 75) (1982) and cits. Thus, the fact that the victim was on probation for a criminal offense was irrelevant and inadmissible.

The fact that the victim staged a robbery of the station on a prior occasion was not admissible, because, under the facts here, it did not tend to establish the appellant's innocence, and because, as previously stated, the character of the victim is generally inadmissible.

Because the evidence concerning Humble was ordered stricken, the appellant's convictions and sentences must be reversed. However, we do note that, viewing the record as a whole, a rational trier of fact could have found the appellant guilty beyond a reasonable doubt.

---

officer as well as written information in the affidavit for the arrest warrant. *Devier v. State*, 253 Ga. 604 (5) (323 SE2d 150) (1984) and cits. The informant's tip was of sufficient reliability to satisfy the totality-of-the-circumstances test of *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983). (2) A trial judge is not required to have a *Jackson v. Denno* hearing prior to trial. *Jarrell v. State*, 234 Ga. 410 (3) (216 SE2d 258) (1975). Accord *James v. State*, 223 Ga. 677 (1) (157 SE2d 471) (1967). The trial court's ruling here that the appellant's statement to police was freely and voluntarily given was not clearly erroneous. *Moon v. State*, 253 Ga. 74 (2) (316 SE2d 464) (1984) and cit. (3) It cannot be said that the trial court abused its discretion in denying appellant's motions for funds to hire an investigator and expert witnesses. *Patterson v. State*, 239 Ga. 409 (3) (238 SE2d 2) (1977). Cf. *Patterson v. State*, 238 Ga. 204 (232 SE2d 233) (1977). (4) The trial court did not err in ruling that since the evidence indicated that the appellant was not indigent, he was not entitled to funds to secure the attendance at trial of an out-of-state witness. Cf. *United States v. Barker*, 553 F2d 1013 (6th Cir. 1977) and cits. At the time of this ruling, the appellant was represented by appointed counsel. However, the Public Defender was subsequently appointed to represent him. (5) The photographs showing the mutilation of the victim taken prior to performance of the autopsy were properly admitted. (6) The trial judge lacked the authority to order the nolle prosequi of the charges against co-defendnat Head. See OCGA § 17-8-3; *Williams v. State*, 126 Ga. App. 302 (1) (190 SE2d 807) (1972); *Price v. Cobb*, 60 Ga. App. 59, 61 (3 SE2d 131) (1939). (7) The enumerations of error addressed to the post-trial proceedings conducted before various judges in the DeKalb Superior Court are moot. (8) We find no merit in the remaining enumerations of error, which consist for the most part of evidentiary rulings of the trial court.

*Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence also supports the jury's findings of the statutory aggravating circumstances beyond a reasonable doubt. See *Bullington v. Missouri,* 451 U. S. 430 (101 SC 1852, 68 LE2d 270) (1981); *Jackson v. Virginia,* supra.

*Judgment reversed. All the Justices concur.*

DECIDED JULY 24, 1985.

*Alden W. Snead,* for appellant.

*Robert E. Wilson, District Attorney, John H. Petrey, Robert E. Statham III, Robert G. Morton, Assistant District Attorneys, Michael J. Bowers, Attorney General, Dennis R. Dunn, Senior Attorney,* for appellee.