## S98A0479. KLINECT v. THE STATE.
### (501 SE2d 810)

HINES, Justice.

Christine Lynn Klinect appeals her conviction on one count of malice murder.[1] For the reasons which follow, we affirm.

Evidence showed that the victim, Lewis Kalo, was Klinect's former husband and the father of Klinect's daughter. At the time of the murder, Kalo resided with Klinect, her common-law husband Mark Wilson, and Klinect's children, including the daughter by Kalo. On the evening of November 13, 1993, Kalo and a co-worker, Dennis Simpson, attended a party and returned to Klinect's house around midnight. Kalo remained asleep in the passenger seat of Simpson's vehicle while Simpson went behind the house where Klinect and Wilson had built a bonfire. Simpson told Klinect and Wilson that Kalo supplied the police with the information that had resulted in Klinect and Wilson being arrested on a marijuana charge a few days earlier. Simpson also told Klinect and Wilson that when he and Kalo were

---

[1] The crime occurred November 14, 1993. Klinect was indicted for malice murder October 19, 1994, and tried before a jury February 6-10, 1995. On February 13, 1995, she was sentenced to life in prison. Her motion for new trial was filed February 13, 1995, amended September 3, 1996, and denied November 25, 1996. Her notice of appeal was filed December 20, 1996, and the appeal was docketed in this Court February 11, 1997. On May 2, 1997, this Court remanded the case for an evidentiary hearing on Klinect's claim of ineffective assistance of prior appellate counsel. Her second amended motion for new trial was filed September 26, 1997, and denied September 29, 1997. Her notice of appeal was filed October 15, 1997, the appeal was docketed in this Court on December 11, 1997, and orally argued March 16, 1998.

sharing a motel room and Klinect's daughter was present, he saw Kalo masturbate while lying next to the sleeping child.

Shortly thereafter, Klinect left the fire and went into the house, where she retrieved a pair of handcuffs. She then handcuffed the left wrist of the sleeping Kalo to the steering wheel of Simpson's car. Kalo awoke and began arguing with Klinect. Wilson and Simpson tried unsuccessfully to remove the handcuffs while Kalo and Klinect were yelling at one another.

According to Simpson's testimony, Klinect stated she would "shut [Kalo] up once and for all" and wrapped duct tape around Kalo's head and face, completely covering his mouth and nose; Kalo's body jerked for approximately a minute before he died. Simpson then cut the handcuff chain and he and Wilson took Kalo's body to a wooded area where Wilson removed Kalo's clothes and the tape around Kalo's head, and left the body. Simpson and Wilson returned to Klinect's home, where Wilson burned his own clothes, Kalo's clothes, and the tape. Klinect declared that they should all have a consistent story; that when Kalo and Simpson returned from the party they began to walk behind the house and a pickup truck turned into the driveway, Kalo went back to the truck, spoke with the driver, got into the truck stating he would be back shortly, and was not seen again. Simpson met with Klinect and Wilson a few days later, and she repeated the version of events she wanted them to report. Simpson left town shortly thereafter.

Three days after the murder, Klinect telephoned police and filed a report that Kalo was missing. She reported that Kalo had left the house with Simpson about 10:00 p.m. on November 13 to go to a party, and had not been seen since. After filing the report, Klinect repeatedly telephoned Kalo's pager and searched a mobile home where Kalo had resided, passing on information she found there to the police. When Kalo's body was discovered after approximately two months, Klinect told police that Simpson had returned from the party about 2:00 a.m. and told her and Wilson that Kalo had left the party with someone in a black pickup truck.

Klinect and Wilson testified that Klinect handcuffed Kalo to the steering wheel as a joke and that Simpson then cut Kalo on the head and wrapped his head in tape. They testified that they did not inform the police that Simpson had killed Kalo because Simpson had threatened them and Klinect's children.

1. Klinect contends the evidence was insufficient to sustain the verdict because the only evidence showing her guilt is Simpson's testimony and a defendant cannot be convicted on the uncorroborated

testimony of an accomplice.[2] See OCGA § 24-4-8. The corroborating evidence connecting a defendant to a crime may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that the defendant participated in the crime. *Bradford v. State*, 262 Ga. 512, 513 (421 SE2d 523) (1992). Whether the corroborating evidence is sufficient is a matter for the jury, and even slight evidence of corroboration connecting an accused to a crime is legally sufficient. Id.; *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996).

By her own testimony, Klinect actively deceived police, filing a false report that Kalo was missing and participating in efforts to locate him which she knew to be futile. This, coupled with her testimony that she handcuffed Kalo to the steering wheel, was sufficient corroboration. The jury was authorized to accept Simpson's testimony, and the evidence authorized the jury to find beyond a reasonable doubt that Klinect was guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. At the time of his testimony in Klinect's trial, Simpson had not been tried for his alleged role in the crime. The State was under an obligation to reveal any agreement it had with Simpson concerning future prosecution, and failure to reveal such an agreement would constitute a due process violation. *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972); *Owen v. State*, 265 Ga. 67, 68 (2) (453 SE2d 728) (1995).

At a pretrial hearing, and again before the jury, Simpson testified there was no agreement and he had received no promise of leniency or incentive to testify. After hearing testimony and reviewing evidence on the motion for new trial, the court ruled that no agreement had been formed. Although Klinect points to an affidavit of Simpson's attorney that arguably suggests the existence of an informal agreement, the attorney later clarified in a letter that no agreement existed, and testified at the hearing that no agreement existed. Additionally, the district attorney testified that no agreement was discussed before the completion of Klinect's trial, and that he made it clear to Simpson's counsel that no agreement would be discussed before that time. That Simpson or his counsel held a hope that testifying in Klinect's trial would benefit him later does not show an agreement. *Isaacs v. State*, 259 Ga. 717, 729-730 (17) (386 SE2d 316) (1989). The trial court's finding was authorized, and there was no due process violation. *Jolley v. State*, 254 Ga. 624, 629 (5) (331 SE2d 516) (1985).

---

[2] Simpson was also indicted for Kalo's murder. He was later tried and acquitted.

3. Klinect sought to question a police investigator about what Simpson's girl friend told the investigator regarding an altercation between Simpson and a man named Triplett, and what the investigator learned about the altercation through other means. She urges that questioning of the investigator would tend to show that Simpson had a violent disposition, supporting her contention that he killed Kalo, although she made no proffer of the officer's expected testimony. See *Harris v. State*, 263 Ga. 526, 527 (2) (435 SE2d 669) (1993). Unlike the situation in *Butler v. State*, 254 Ga. 637 (332 SE2d 654) (1985), where it was error to refuse admission of evidence of a violent history between the person the defendant contended committed the murder and the victim, Klinect did not seek to introduce any evidence that Simpson had a violent history with Kalo, only that he had a generally violent disposition. Klinect was allowed to elicit testimony from the police investigator, Simpson, and Simpson's girl friend about an altercation between Simpson and his girl friend a month before the murder, for which Simpson was jailed.

Klinect contends that curtailing her cross-examination of the investigator nonetheless prevented her from showing that Simpson was the true murderer. Certainly a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. *Henderson v. State*, 255 Ga. 687, 689 (1) (341 SE2d 439) (1986). However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature. *Croom v. State*, 217 Ga. App. 596, 599 (3) (458 SE2d 679) (1995); *Bradford v. State*, 204 Ga. App. 568 (420 SE2d 4) (1992). Assuming that the desired cross-examination of the investigator would reveal that Simpson had an altercation with a man named Triplett, this testimony would reflect only on Simpson's character. It would not show any motive Simpson had to kill Kalo. Compare *Walker v. State*, 260 Ga. 737 (1) (399 SE2d 199) (1991), and *Henderson*, supra. Nor would it connect Simpson to the corpus delicti or show that he had committed a similar crime by similar methods. *Croom*, supra; *Bradford*, supra.

The court's ruling did not violate Klinect's Sixth Amendment right to confrontation or her statutory right to cross-examine witnesses. See *Delaware v. Van Arsdall*, 475 U. S. 673, 679 (106 SC 1431, 89 LE2d 674) (1986); OCGA § 24-9-64. The defense is entitled to a thorough cross-examination, but the scope of cross-examination is within the sound discretion of the trial court, and under the facts of this case, there was no abuse of discretion. *Chastain v. State*, 257 Ga. 54, 55 (354 SE2d 421) (1987).

4. The court admitted into evidence photographs of Kalo's body

in the condition in which it was found; it was partially decomposed and the skull was essentially skeletonized. Photographs showing the condition and location of the victim's body are admissible where alterations to the body are due to the combined forces of the murderer and the elements. *Garcia v. State*, 267 Ga. 257, 258 (3) (477 SE2d 112) (1996); *Drane v. State*, 265 Ga. 255, 260 (10) (455 SE2d 27) (1995). See also *Bromley v. State*, 259 Ga. 377, 382 (8) (380 SE2d 694) (1989).

5. Nor was it error to admit a photograph of Kalo while he was alive. Although the better practice is to have the photograph identified by one not a close family member, *Ledford v. State*, 264 Ga. 60, 66 (14) (439 SE2d 917) (1994), Klinect did not object that the identification of the photograph was made by Kalo's father rather than by a non-related witness. Under these circumstances, there was no error. Id. See also *Garcia*, supra at 257 (2).

6. On cross-examination, the State questioned Klinect about whether she ever called the police to report the crime, and during closing argument commented on her failure to do so. Klinect contends this violated her right to pre-arrest silence. See *Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991). However, she did not object or move for a mistrial and cannot raise the issue for the first time on appeal. *Lawton v. State*, 259 Ga. 855, 856 (2) (388 SE2d 691) (1990). Further, the State's cross-examination of Klinect, and its comments concerning her filing a false missing persons report and her failure to tell police investigators that Simpson had killed Kalo, occurred after Klinect had testified on direct examination that she had taken those actions, and why she had done so. Compare *Mallory*, supra.

7. It was not error to allow the admission of testimony to the effect that Klinect and Wilson were arrested on a marijuana charge a few days before the murder. This evidence was relevant because the State contended that Klinect's motive for the murder was her belief that Kalo had informed police about her drug activities, resulting in her arrest, and that the pending charges raised the possibility that Kalo would gain custody of Klinect's daughter, who Klinect feared Kalo might molest. See *Hartman v. State*, 266 Ga. 613, 614 (2) (469 SE2d 163) (1996). This evidence of motive was admissible even though it incidentally put Klinect's character in issue. *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990).

Nor was it error to admit Simpson's testimony that he had overheard Kalo tell another person at the party that, because of Klinect's arrest, Kalo might gain custody of his daughter. Testimony is considered hearsay only if the declarant's out-of-court statement is admitted to prove the truth of the statement. *Waldrip v. State*, 267 Ga. 739, 748 (12) (482 SE2d 299) (1997). Simpson testified that after he told

Klinect of Kalo's statement, and told her of the prior incident concerning her daughter, Klinect murdered Kalo, stating that Kalo "won't snitch or child molest nobody else." Kalo's former statement was admitted to show the motive for the murder, not to prove that Klinect actually had been arrested, or that Kalo actually would gain custody. Id.

8. It was not error to charge the jury on the law of parties to a crime pursuant to OCGA § 16-2-20. Klinect's own testimony was that she handcuffed Kalo to the steering wheel, Simpson killed Kalo, and she then participated in efforts to conceal the crime. This authorized a charge on parties to a crime. *Moore v. State*, 254 Ga. 525, 532 (8) (b) (330 SE2d 717) (1985).

9. Lastly, the court did not err in failing to charge the jury on the law of accessory after the fact. Klinect was not indicted for the separate crime of obstruction of justice. See OCGA § 16-10-24; *Jones v. State*, 250 Ga. 11, 13 (295 SE2d 71) (1982). She did not submit a written request to charge on accessory after the fact or obstruction of justice, but contends such a charge should nonetheless have been given, citing *Tarvestad v. State*, 261 Ga. 605 (409 SE2d 513) (1991). *Tarvestad* held that a defendant's sole defense must be charged even when no written request is made. Assuming arguendo that a separate offense is a "sole defense" as used in *Tarvestad*, such a charge was not required here. The court need not specifically charge on an affirmative defense when the entire jury charge fairly presents the issues, including the defendant's theory. *Tarvestad*, supra at 606. In addition to the court's charge on parties to a crime, the court instructed that the defendant's mere presence at the scene of the crime, without participation in the crime, would not authorize a conviction, and that mere association with one who committed the crime, without participation in the crime, would not authorize a conviction. The court also charged that to convict, the jury would have to find that the State proved beyond a reasonable doubt that Klinect knew the crime of murder was being committed and knowingly assisted in some way, and that if the jury did not so find, its duty was to acquit. The charge as a whole fairly presented the issues, including Klinect's theory that she was only an accessory after the fact.

*Judgment affirmed. All the Justices concur, except Hunstein and Thompson, JJ., who concur in the judgment only as to Division 5.*

DECIDED JULY 6, 1998.

*Brian Steel, David H. Jones,* for appellant.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K.*

*Smith, Senior Assistant Attorney General, Angelica M. Woo, Assistant Attorney General,* for appellee.