NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 6, 2025

S25A0412.  MORGAN v. THE STATE.

LaGrua, Justice.

Deangelo Deshawn Morgan challenges his 2023 convictions for the fatal shooting of Sabron Mosby and aggravated assault of Donoven King.[1] Morgan was tried separately from his co-indictees, Cleavanta Jerrideau and Glenn Darius Smith, both of whom were

---

[1] The crimes occurred on October 15, 2018. On March 28, 2019, a Bacon County grand jury indicted Morgan, Cleavanta Jerrideau, and Glenn Darius Smith for malice murder in the death of Mosby and for aggravated assault by shooting at King. As the trial of Morgan, Jerrideau, and Smith was about to begin, Morgan's counsel was allowed to withdraw because of a recently discovered conflict of interest related to a potential witness. The trial court severed Morgan's trial and proceeded with Jerrideau's and Smith's trial; both Jerrideau and Smith were acquitted. At a trial from October 2 through October 4, 2023, the jury found Morgan guilty of the offenses for which he was indicted. On October 4, 2023, the trial court sentenced Morgan to serve life in prison with the possibility of parole for malice murder and a consecutive term of twenty years in prison for aggravated assault. Morgan filed a timely motion for new trial, and new counsel filed a brief asserting amended grounds on August 27, 2024. After an evidentiary hearing, the trial court entered an order denying the motion for new trial on October 7, 2024. Morgan filed a timely notice of appeal, and the case was docketed in this Court to the term beginning in December 2024 and submitted for a decision on the briefs.

acquitted. In this appeal, Morgan contends that the trial court abused its discretion in excluding (1) evidence that allegedly showed that the shooting was drug related and (2) evidence implicating other potential suspects. He also asserts that his trial counsel was constitutionally ineffective by failing to "properly" argue for the admission of the evidence that was excluded and by advising Morgan not to testify. As explained below, these claims fail, and we affirm.

The evidence presented at trial showed that Morgan and Mosby, who were in their early to mid-twenties, had grown up together, had been close, with Morgan considering Mosby "his older brother," and both lived in their hometown of Alma, Georgia. Jerrideau and Smith had also grown up in Alma and were friends with Morgan. Shortly before the October 15, 2018 shooting, Morgan and Mosby had "a falling out over . . . females" and were "not seeing eye to eye" and were "bumping heads." On the morning of the shooting, Morgan, his girlfriend Paizsa Murchison, and his cousin Bree'Onka Vaughn drove in Morgan's car to Waycross to rent a car

— a red Ford Fusion. Murchinson rented the car, but Morgan paid for it. After leaving Waycross in the rental car, the three made several stops in Alma before returning to Morgan's home, including stopping to visit Devante Batton. Sometime later that day, Morgan left in the rental car alone while Murchinson stayed at Morgan's home. After leaving his home, Morgan stopped at Smith's home around 8:30 p.m. Just before the shooting, Smith and Jerrideau were seen standing outside of a church very close to where Mosby lived. Around 8:50 p.m. that evening, Mosby was in his front yard with King and others around a barrel fire. Mosby's aunt, who lived two doors down, was inside her home and saw a red car passing by her house slowly and then pass by again going in the other direction toward Mosby's home. Less than two or three minutes after Mosby's aunt saw the red car, she heard gunfire. Mosby was shot four times, twice in the back and twice in the leg. He also suffered burns from falling onto the barrel fire. He was declared dead at the scene, and the medical examiner determined that the cause of death was multiple gunshot wounds.

Right after the shooting, King ran to Mosby's aunt's home, telling her, "They're shooting at me and [Mosby]." Mosby's aunt called 911, and Chief Cody Phillips of the Alma Police Department responded to the scene. Chief Phillips called in the GBI. Chad Lott, a GBI crime scene specialist, recovered over 90 cartridge casings, which were three different sizes. Some were 9mm cartridges, which are "usually a handgun round." The other cartridges were ones used in a "high-powered rifle" or an "AK style rifle," and those cartridges were fired from two different guns. The guns that were fired were never recovered. Near Mosby's body, Lott recovered a handgun with one live bullet in the chamber and a full magazine. Lott also recovered a clown mask from the street directly in front of Mosby's home. Swabbings from the mask contained a mixture of the DNA of "at least three individuals," one of whom was later determined to be Morgan. Jerrideau was excluded as a contributor to the DNA mixture, and the results as to Smith were inconclusive.

When Morgan returned to his home, Murchinson saw that he had a black handgun. Morgan and Murchinson left Morgan's home

and spent the night in a hotel in Waycross with Vaughn. That evening, Morgan told Murchinson and Vaughn that "he did it," that "he got out of the car and he was shooting," and that he was wearing a clown mask at the time. Vaughn saw Morgan with a small black gun at the hotel.

Morgan did not testify at trial, but GBI Special Agent Jason Nipper testified about a statement that Morgan gave approximately five to six hours after the shooting. Morgan came to the Bacon County Sheriff's office, voluntarily spoke with Special Agent Nipper after being requested to do so, consented to having a buccal swab of his DNA taken, and left after giving the statement. In his statement, Morgan said that he had no involvement with the shooting on October 15 and that he spent the day at his home with a woman named "Lyric," after he had argued with Murchinson. He received a phone call about the shooting sometime during the evening of October 15, and afterward, he and Lyric drove to Lyric's home in Hazelhurst. While he was in Hazelhurst, he received a call from his mother who told him that the police wanted to speak with him, so

5

he came back to Alma. He said that his cell phone was no longer working, despite having said that he recently received calls about Mosby's death and from his mother.

Lyric Conaway testified that she had been with Morgan in the early morning hours of October 15 but was not with him later that day, was not with him when he learned about the shooting, and did not drive to her home in Hazelhurst with him later that evening.

According to Murchinson's and Vaughn's testimony, Morgan, Murchinson, and Vaughn drove the rental car to Jacksonville, Florida, the day after the shooting to have a bullet hole in the windshield repaired. But before driving to Florida, Vaughn smashed the windshield with a cooking pot because she wanted to hide the bullet hole. They also purchased cleaning supplies and cleaned and vacuumed the rental car. Murchinson and Vaughn were later arrested in connection with Mosby's death,[2] and while Murchinson was in jail, she wrote a letter to Morgan, telling him that it appeared

---

[2] Murchinson and Vaughn subsequently pleaded guilty to tampering with evidence.

that Vaughn told police that Morgan was the shooter, but that Murchinson "would never get [Morgan] locked up." The letter also stated that Murchinson had "cleaned my phone out" and that she "did everything to help" Morgan.

The police recovered the rental car at a body shop in Jacksonville, Florida, and discovered a large hole in the windshield and bullet defects on the outside of the car. Before Morgan's trial, Jerrideau and Smith, Morgan's co-indictees, were tried together and both were acquitted.

Additional facts necessary to address Morgan's contentions are set forth below.

1. Morgan asserts that the trial court abused its discretion in excluding certain evidence that he contends would have shown that the shooting was drug-related or that would have shown that other persons committed the crime. Specifically, Morgan contends that the trial court abused its discretion in precluding him from presenting the following evidence: (1) that at the time Mosby was killed, he had items in his pockets that Morgan characterizes as

"suspected drugs"; (2) that Batton, who spent time with Morgan on the day of the shooting, was, at the time of trial, in jail on an unrelated murder charge; (3) that Jerrideau's girlfriend disposed of "the murder weapon" at Jerrideau's direction; and (4) that drugs and guns were seized in a search of the home of Smith. We address each contention in turn.

(a) After the jury had been selected, the trial court heard motions in limine and granted the State's motion to exclude evidence that Mosby had potentially drug-related evidence on him at the time he died. Specifically, the State's motion stated that there was a $10 bill with a "pink powder residue" in Mosby's wallet and that in Mosby's pockets, there was "a small amount of suspected marijuana" and an "Aleve" bottle containing "suspected crack cocaine." In its motion and at the hearing, the State argued that the substances were never tested, and thus, there was no evidence that Mosby possessed illegal drugs when he was killed. The State also argued the contents of Mosby's pockets were not relevant and that even if the evidence was relevant, it should be excluded under OCGA § 24-

4-403 because the probative value was substantially outweighed by the danger of unfair prejudice given that the jury might conclude that Mosby was a drug dealer whose "death was somehow justified." After hearing arguments, the trial court granted the State's motion.

Morgan contends that this evidence was "intrinsic evidence"[3] and that its exclusion prevented him from arguing the shooting occurred over drug use. Pretermitting whether the trial court abused its discretion in excluding the evidence, it is highly probable that any such error did not contribute to the verdicts because of the strong evidence of Morgan's guilt. See *Jivens v. State*, 317 Ga. 859, 863 (2) (896 SE2d 516) (2023) ("A trial court's evidentiary error warrants reversal only if it was harmful. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (cleaned up)). Here,

---

[3] "[E]vidence is considered intrinsic to the charged offense when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." *Roberts v. State*, 315 Ga. 229, 236 (2) (a) (880 SE2d 501) (2022) (citation and punctuation omitted).

the evidence that Morgan shot Mosby included Morgan's own statement that he did so while wearing a clown mask and the presence of his DNA on the clown mask found at the scene. The fact that Mosby possessed a small quantity of suspected drugs at the time he was killed would have had little impact on the jury's assessment of the evidence as a whole. Thus, it is highly probable that any error in excluding this evidence did not contribute to the verdicts. See *Wilson v. State*, 319 Ga. 550, 555-556 (2) (905 SE2d 557) (2024) (holding that any assumed error in excluding speculative testimony was harmless where the evidence against the defendant was strong and the testimony did not rebut that strong evidence); *Jones v. State*, 315 Ga. 177, 122-124 (4) (800 SE2d 509) (2022) (assuming that the trial court made several erroneous evidentiary rulings and concluding that any error was harmless because there was "strong" evidence of the defendant's guilt and the admission of the challenged evidence would have had "little" impact on the jury's assessment of the trial evidence as a whole).

(b) Morgan also challenges the exclusion of evidence that he

10

contends would show that another person murdered Mosby. Under OCGA § 24-4-401 ("Rule 401"), evidence that a person other than the defendant committed the crime is generally relevant,[4] and relevant evidence is generally admissible. See OCGA § 24-4-402. But "[b]efore testimony can be introduced that another person committed the charged crime, the proffered evidence must raise a reasonable inference of the defendant's innocence and, in the absence of a showing that the other person recently committed a crime of the same or similar nature, must directly connect the other person with the corpus delicti." *Roberts v. State*, 305 Ga. 257, 260 (3) (824 SE2d 326) (2019) (quoting cases, including *Klinect v. State*, 269 Ga. 570, 573 (501 SE2d 810) (1998), setting forth test under old Evidence Code).[5] Additionally, evidence that offers mere speculation and

---

[4] Rule 401 defines relevant evidence as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[5] The *Klinect* test we apply here is an artifact of the old Evidence Code, which might have been wrong under that old code, and might be wrong under the current code. See *Pittman v. State*, 318 Ga. 819, 831-835 (901 SE2d 90) (2024) (Peterson, PJ, concurring). But here – as in *Pittman* – no party has challenged our precedent that carried the *Klinect* test forward under the current Evidence Code. Accordingly, we apply that precedent here.

11

conjecture that a third person could have been involved in the crime does not raise a reasonable inference of the defendant's innocence and thus is not relevant. See *Pittman v. State*, 318 Ga. 819, 826-827 (4) (901 SE2d 90) (2024). As explained below, the evidence Morgan sought to introduce did not raise a reasonable inference of his innocence.

(i) During trial, Morgan elicited testimony that the State had not sought a DNA sample from several people, including Batton, even though Morgan spent two hours at Batton's home shortly before the shooting. Outside the presence of the jury, Morgan indicated that he intended to ask Special Agent Nipper on cross-examination about where Batton was currently located. According to Morgan, Batton was in jail in another county on an unrelated murder charge. There was no proffer regarding the facts underlying Batton's murder charge. The State objected, and the trial court ruled that Morgan could not ask about Batton's current location or the charges he was facing.

On appeal, Morgan suggests that because Batton was charged

12

with murder and because Morgan and Batton had spent time together a few hours before the murder, evidence that Batton was in jail on an unrelated murder charge was admissible. However, evidence that Morgan had been with another person a few hours before the shooting and that at some point that person had been charged with an unrelated murder, without more, does not raise a reasonable inference of Morgan's innocence. Accordingly, the trial court did not abuse its discretion in precluding Morgan from asking about Batton's location or pending charges. See *Payne v. State*, 314 Ga. 322, 333 (3) (g) (877 SE2d 202) (2022) (holding that evidence that another person may have been at the crime scene at some unknown point in time and had been convicted of an unrelated crime did not raise a reasonable inference of appellant's innocence). See also *Palmer v. State*, 318 Ga. 511, 529-530 (5) (899 SE2d 192) (2024) (holding that evidence that two months after the crime for which appellant was on trial — the fatal shooting of appellant's estranged wife and his step-daughter — appellant's son shot at another person in a drug-related dispute would not have raised a reasonable

13

inference of appellant's innocence, in part because there was no evidence of appellant's son having any animus toward the victims).

(ii) Morgan also challenges the trial court's ruling that he could not call two witnesses whom he contended would present evidence inculpating his co-indictees Jerrideau and Smith.[6] The first witness, Brandi Waters, testified outside the presence of the jury that she had been Jerrideau's girlfriend in 2018; that after Jerrideau was arrested for Mosby's murder and while he was in jail, he called her and asked her to go to the home of another person, retrieve a "Draco" or "Draco-style" firearm from that person, and call a second person, who would come "pick it up for $1,000." Waters testified that she did as Jerrideau asked. The second witness was Emmanuel County Investigator Kendra Fitzgerald. According to Morgan's proffer, Investigator Fitzgerald would testify that during the investigation of Mosby's murder, investigators found "burnt magazines, burnt ammo casings, drugs, plastic bags, and rifle magazines" behind

---

[6] Morgan does not assert any other basis for the admission of the testimony related to Jerrideau and Smith.

14

Smith's house.

With regard to Waters's testimony, Morgan argues that the testimony was relevant because it showed that Jerrideau arranged for the disposal of the "murder weapon," although he does not cite to any evidence in the record that supports characterizing the gun as "the murder weapon." And there was no proffer that the gun that Waters transferred at Jerrideau's direction was the murder weapon. Nor was there a proffer as to the caliber or style of the gun, such that there was nothing to connect the "Draco-style" gun to the shell casings recovered from the scene of the crime. Thus, in the absence of any evidence connecting the gun to the murder of Mosby, the trial court did not abuse its discretion in excluding the testimony. See *Klinect*, 269 Ga. at 573 (3) (holding that trial court did not abuse its discretion in precluding appellant from eliciting testimony about his co-indictee, who was tried separately and acquitted, where such testimony only reflected on the co-indictee's character and did not show that the co-indictee had a motive to kill the victim, did not connect him to the corpus delicti, and did not show that he had

committed a similar crime by similar methods).

With regard to Fitzgerald's testimony that burnt gun magazines and drugs were found in a search of Smith's property, Morgan concedes in his brief that the evidence would not exonerate him, but he asserts that because there were 90 cartridge cases of different sizes, the evidence showed that more than one person was involved and that the evidence found behind Smith's home was relevant to show Smith's motive to shoot Mosby — a drug deal gone bad. However, as noted above, there was no evidence presented or proffered that Mosby's shooting was related to a drug deal. Rather, the only evidence of motive was that Morgan and Mosby had a falling out over women. The mere existence of burnt gun magazines and drugs on Smith's property bears no logical connection to Mosby's shooting. And precisely because the evidence did suggest that more than one person was shooting at Mosby, evidence related to who those other persons might be does not raise a reasonable inference of *Morgan's* innocence, especially given Morgan's own inculpatory statements to Murchinson and Vaughn and the discovery of his DNA

16

on the clown mask recovered on the street at the site of the shooting. Accordingly, the trial court did not abuse its discretion in excluding the evidence related to Jerrideau and Smith. See *Klinect*, 269 Ga. at 573 (3) (501 SE2d 810) (1998). See also *De La Cruz v. State*, 303 Ga. 24, 28 (3) (810 SE2d 84) (2018) ("[E]vidence that merely casts a bare suspicion on another or raises a conjectural inference as to the commission of the crime by another is not admissible." (citation and punctuation omitted)).

2. Morgan asserts that he was denied the effective assistance of counsel in three ways: first, by counsel's failure "to properly argue for the admission of the drug evidence" related to Mosby and Smith; second, and relatedly, by counsel's failure to seek a certificate of immediate review after the trial court's oral ruling excluding evidence of Mosby's possession of purported drugs at the time of his death; and third, by counsel's advice to Morgan that he not testify. We will address each contention in turn, applying the constitutional standard set forth in *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

17

"To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient, and that the deficient performance resulted in prejudice to the defendant." *Moss v. State*, 311 Ga. 123, 126 (2) (856 SE2d 280) (2021) (citing *Strickland*, 466 U.S. at 687-695). "To prove deficient performance, [an appellant] must show that his counsel performed in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Ward v. State*, 313 Ga. 265, 273 (4) (869 SE2d 470) (2022) (citation and punctuation omitted).

> The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case, and decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Taylor v. State*, 312 Ga. 1, 15-16 (6) (860 SE2d 470) (2021) (citations and punctuation omitted).

"To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient

performance, the result of the trial would have been different." *Moss*, 311 Ga. at 126 (2). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." Id. (citation and punctuation omitted). In reviewing a trial court's ruling on a claim of ineffectiveness of counsel, "we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the relevant legal principles to the facts." *Bowman v. State*, 319 Ga. 573, 577 (2) (905 SE2d 605) (2024) (citation omitted).

(a) Morgan first contends that his trial counsel was ineffective for failing to "properly argue for the admission of the drug evidence" related to Mosby and Smith, and, relatedly, that his trial counsel was deficient in failing to seek a certificate of immediate review after the trial court's oral ruling that the purported drug evidence related to Mosby was not admissible.

However, Morgan has not set forth the arguments he contends counsel should have made to secure the admission of the evidence

19

related to Mosby and Smith or to obtain a certificate of immediate review, and thus, he cannot show that the failure to make unspecified arguments was objectively unreasonable. See *Swinson v. State*, 311 Ga. 48, 55-56 (2) (b) (855 SE2d 629) (2021) (rejecting claim that trial counsel was deficient for failing to properly file and argue motion where appellant failed to identify other arguments counsel should have made), disapproved of on other grounds, *Outlaw v. State*, 311 Ga. 396, 401 (2) n.5 (858 SE2d 63) (2021). Thus, Morgan has failed to show that his trial counsel performed deficiently with regard to the drug evidence related to Smith and Mosby or in failing to seek a certificate of immediate review.

(b) Morgan next contends that his trial counsel performed deficiently by advising him not to testify at trial. Whether to testify in one's own defense is a tactical choice to be made by the defendant after consultation with his lawyer, and trial counsel's advice to a defendant not to testify is a strategic decision. See *Nabors v. State*, 320 Ga. 43, 47 (1) (907 SE2d 684) (2024). "It is generally enough for counsel to advise the defendant about the 'pros and cons' of

testifying and explain that the ultimate choice is the defendant's to make." Id. at 48 (cleaned up).

Here, Morgan's trial counsel testified at the motion-for-new-trial hearing that he advised Morgan several times that it was Morgan's choice whether to testify and that he reviewed the pros and cons of testifying with Morgan. Trial counsel explained that he had concerns with how the jury would view Morgan's credibility if he did testify, given that Morgan had provided Special Agent Nipper with the name of an alibi witness, but that witness, Lyric Conaway, testified that she was not with Morgan that evening at all. Morgan has not shown that his trial counsel's advice or strategy was "so patently unreasonable that no competent attorney would have followed such a course." *Nabors*, 320 Ga. at 49 (1). Because trial counsel's advice to Morgan to not testify was a strategic one and was not patently unreasonable, we conclude that Morgan has failed to show that his trial counsel's advice was deficient. See *Nabors*, 320 Ga. at 49-50 (1); *Goff v. State,* 308 Ga. 330, 334 (1) (840 SE2d 359) (2020).

Accordingly, Morgan's claims of ineffective assistance of trial counsel fail.[7]

*Judgment affirmed. Peterson, CJ, Warren, PJ, and Bethel, Ellington, McMillian, Colvin, and Pinson, JJ, concur.*

---

[7] In his brief, Morgan cites *State v. Lane*, 308 Ga. 10 (1) (838 SE2d 808) (2020), and states, without elaboration or further argument, that "when taken in aggregate [the enumerations of error] present unmistakable evidence of injustice." Because we have assumed only one evidentiary error and have determined that Morgan's trial counsel did not perform deficiently, cumulative error analysis under *Lane* is not applicable. See *Tabor v. State*, 315 Ga. 240, 251 (5) n.16 (882 SE2d 329) (2022) (holding that to show cumulative error, an appellant must show that at least two errors were committed).