318 Ga. 819
FINAL COPY

S24A0013. PITTMAN v. THE STATE.

Boggs, Chief Justice.

Appellant Randy Leon Pittman, Jr., challenges his convictions for malice murder and arson in connection with the shooting and burning death of Natoshia Smith. Appellant contends that the evidence was legally insufficient to support his convictions because the evidence failed to sufficiently identify Smith's skeletal remains; that the trial court erred in denying his motion to disqualify the District Attorney; that the trial court abused its discretion in prohibiting him from asking witnesses about other fires that occurred while he was incarcerated; and that the trial court erred in denying a motion for mistrial. We conclude that the forensic evidence and eyewitness testimony was sufficient to identify Smith as the victim and that there was no error in refusing to disqualify the District Attorney based on the District Attorney's prior representation of Appellant, where it was undisputed that the prior

representation ended several years before, and was completely unrelated to, the murder prosecution. We also conclude that the trial court did not abuse its discretion in excluding evidence of other fires because the evidence was not relevant. Finally, we conclude that Appellant did not preserve for appeal his claim related to the denial of his motion for mistrial. Accordingly, we affirm.[1]

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Appellant and Smith were dating prior to her death. On the afternoon of July 23,

---

[1] The crimes occurred on July 24, 2015. On November 14, 2016, a Haralson County grand jury indicted Appellant for malice murder, felony murder, aggravated assault with a deadly weapon, arson in the first degree, and possession of a firearm by a convicted felon. The felon-in-possession count was bifurcated for trial and nolle prossed after trial. The indictment also charged Marie Southers with malice murder, felony murder and aggravated battery in connection with Smith's death. Southers pled guilty to aggravated battery and testified against Appellant. At a trial from October 23 to November 1, 2017, the jury found Appellant guilty of the remaining charges. The trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder and a consecutive term of 20 years for arson. The felony murder verdict was vacated by operation of law, and the aggravated assault count merged into the malice murder conviction. On November 10, 2017, Appellant filed a motion for new trial, which he amended with new counsel on January 29, 2021. After an evidentiary hearing before a successor judge on February 22, 2023, the trial court entered an order denying the motion for new trial on March 17, 2023. Appellant filed a timely notice of appeal, and the case was docketed in this Court to the term beginning in December 2023 and submitted for a decision on the briefs.

2015, Appellant was at the home of his co-indictee Marie Southers when he learned from other friends that Smith had stolen items from the friends' home. Appellant told Southers that he could not take Smith anywhere without her "stealing, lying, or just intentionally making him look bad." At Appellant's request, Southers telephoned Smith to ask her to come over, and then Appellant picked Smith up and brought her to Southers's home at about 3:30 p.m. When Smith arrived, she appeared to be high on methamphetamine, and Southers asked Smith to go into a bedroom. As Smith did so, she dropped a syringe full of methamphetamine on the floor, which angered Southers because Southers's children were present. Southers told her children to go next door to their grandparents' home and then followed Smith into the bedroom, and Appellant walked outside to take a phone call. Smith told Southers that Appellant had "forced himself on her" and forced her to do drugs. When Appellant returned to the bedroom, Southers told him about Smith's accusations. Smith accused Southers of lying, and the two women got into a fist fight, with Southers punching Smith three

3

times in the face and then telling Smith to leave. As Appellant and Smith left in Appellant's car, Appellant told Smith to lie down in the back seat so no one would see her with him.

Sometime after midnight, Appellant called Southers and said he was at his father's house and needed gas. Southers and her husband took a one-gallon can of gas to Appellant's father's house, saw Appellant and Smith in Appellant's car, left the gas can by the car, and then returned home. Several hours later, Appellant called Southers and said there was an issue that they needed to discuss, but he did not say what it was. Appellant asked her to come to a location on Coppermine Road and provided directions. Southers arrived at that location about 5:00 or 6:00 a.m. and saw Appellant's car parked in front of an unoccupied and dilapidated house. Appellant was standing by the open front passenger door; he was holding a gun and trying to force Smith out of the car. The gun was a "little 22" with a pearl-colored handle that Southers had seen Appellant carry before. Appellant appeared angry and told Smith that he did not know why she had to make him look bad all the time,

4

that he had done nothing but try to be good to her, and that he could not take her anywhere. While pointing the gun at Smith, Appellant forced her to remove her belongings from the car and to walk into the house. Southers followed and remained in the doorway of the house. Appellant was carrying a gas can that appeared to be the one Southers and her husband had taken to Appellant. Smith pleaded, "Please don't do this. You don't have to do this," and Appellant responded that he had made her a promise, she knew what the promise was, and she knew that he was a man of his word. Appellant put the gun in his boot, grabbed Smith's arm when she tried to walk out of the house, taped her arms behind her, put her on the floor, taped her legs, dragged her across the floor, and yanked her to her knees. Smith again pleaded, "Please don't do this." Appellant then walked behind Smith, and Southers heard the gun cock, saw Appellant point the gun at the back of Smith's head, and heard the gun fire. Smith fell face first onto the floor. Appellant told Southers to leave, and Southers drove home. About three hours later, Appellant called Southers, said "she's dead," and then hung up.

A few days later, Appellant came to Southers's home and told Southers that he had put Smith's belongings on top of her and set Smith and her possessions on fire; that Smith was alive when he set her on fire; and that he threw the gun into Morgan Lake. He also told Southers, "The more you kill the easier it gets." In a later conversation, Appellant told Southers that he returned to the abandoned house two times; that a pill bottle that he had placed in the fire had not burned; that the bottle contained a prescription label for Smith's former boyfriend, Matthew Hurston, and could point police toward Hurston instead of him as a suspect; and that he put Smith's phone in Hurston's house. Appellant also said that he was worried the police would find his DNA in Smith's body.

The crime scene was not discovered until August 29, 2015, when a man who had been looking for scrap wood found a skull and other bones in front of the home; he called 911. During the ensuing investigation, law enforcement officers collected multiple human bones spread on the ground outside of the house, including a jawbone with a metal plate in it and a skull with what appeared to

6

be a bullet hole in it. Several of the bones had charring on them. The officers also discovered evidence of a fire that had burned through the floor in one room of the house. Officers collected a partially burned medicine bottle for a prescription for Matthew Hurston from that room. An investigator with the Haralson County fire department concluded that the fire was intentionally set using a flammable liquid that had been poured between the entryway of the room and the interior of the room. During his investigation, he searched the ground under the hole in the floor and recovered human bones and hair, a necklace, and a piece of wire that appeared to come from an underwire bra. A forensic chemist testified that testing completed on wood and carpet samples taken from the scene of the fire indicated the presence of gasoline.

Smith's remains were initially identified by a dentist who treated Smith in 2012 after her jaw had been surgically repaired after Hurston had hit her and broke her jaw. At trial, the dentist testified that the jawbone with the metal plate found on August 29 was Smith's. The medical examiner testified that she compared

ante-mortem dental x-rays of Smith with post-mortem x-rays of the jawbone found at the scene and concluded that the jawbone found at the scene was Smith's. The medical examiner also testified that the skull had a hole in it that was consistent with a gunshot wound, and she recovered a bullet from the right side of the skull. The medical examiner determined that the cause of death was a gunshot to the skull "with burning." A firearms expert testified that the bullet recovered from the skull was a .22-caliber. The gun that fired the bullet was never found.

In addition to Southers's testimony, the State presented several witnesses who testified to inculpatory statements made by Appellant before the details of the crime scene were made public. One of those witnesses was Adrian Williamson, who was incarcerated with Appellant in the Carroll County jail before Appellant was arrested for Smith's murder and who testified about statements Appellant made to him in December 2015 or January 2016. According to Williamson, Appellant related a story about a murder in which an unnamed man shot a woman in the back of the

8

head with a pearl-handled .22-caliber gun and burned her. Appellant said that the woman had an ex-boyfriend who had broken her jaw previously, but the ex-boyfriend had been in jail at the time of the murder, and police cleared him. In connection with telling this story, Appellant asked Williamson how long DNA would stay in a body if the body had been scattered by animals. He also said that "a guy" had thrown a pearl-handled .22-caliber gun into a lake and that if the gun was ever found, "I'm f**ked."

Investigator Bernie Reece III of the Haralson County sheriff's office interviewed Appellant at the Carroll County jail. He testified that Appellant said that he and Smith had dated until the end of June 2015 and that the last time Appellant saw her was July 4 when she and a friend dropped him off at his father's house. Appellant also said that Hurston had told him that the police had cleared Hurston as a possible suspect.

2. Appellant contends that the evidence was insufficient to support his convictions because the skeletal remains found on August 29, 2015, were not sufficiently identified as Smith's

9

remains.[2] His argument implicates an essential element the State must prove in a murder prosecution — "that the person alleged to have been killed is actually dead." *Gude v. State*, 313 Ga. 859, 865 (874 SE2d 84) (2022) (cleaned up); *Reddick v. State*, 202 Ga. 209, 209 (42 SE2d 742) (1947) (discussing element of "corpus delicti"). See also OCGA § 16-5-1 (a) ("A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being."). Here, the State presented forensic identification testimony by two experts, as well as Southers's testimony about Appellant's actions on July 24 and July 25. This evidence, viewed in the light most favorable to the verdicts, was clearly sufficient to authorize a rational jury to

---

[2] Appellant summarily states that the evidence was insufficient to prove beyond a reasonable doubt that "he was involved in any of the charged crimes." However, the only substantive argument he makes relates to the identification of the victim. Because we no longer automatically review sua sponte the sufficiency of the evidence, except that of murder convictions resulting in the death penalty, see *Davenport v. State*, 309 Ga. 385, 398-399 (846 SE2d 83) (2020), we limit our consideration to the one argument that Appellant makes in challenging the sufficiency of the evidence. See *Scoggins v. State*, 317 Ga. 832, 837 n.6 (896 SE2d 476) (2023). See also former Supreme Court Rule 22 (2023) ("Any enumerated error not supported by argument or citation of authority in the brief shall be deemed abandoned.").

conclude that the skeletal remains found at the vacant house on Coppermine Road on August 29, 2015, were Smith's. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Lowe v. State*, 288 Ga. 662, 662-663 (706 SE2d 449) (2011) (evidence constitutionally sufficient to find appellant guilty of malice murder in the death of her housemate where identity of housemate, whose badly decomposed body was discovered in the woods by hunters, was established by dental records and where appellant told a friend that she had fought with housemate, hit her with truck, and watched her body fly into the brush on the side of the road).

3. Appellant contends that the trial court abused its discretion in denying his motion to disqualify the Haralson County District Attorney because the District Attorney previously represented Appellant in several cases when the District Attorney had been a public defender. Appellant acknowledges that at a pretrial hearing the District Attorney testified without contradiction that the prior representations ended before 2013 and were

11

completely unrelated to the murder prosecution,[3] but Appellant nevertheless argues that he need not show that an actual conflict of interest existed under these circumstances. We disagree.

Appellant has cited no authority, and we have found none, supporting the argument that a prosecutor's prior representation of a criminal defendant in a completely unrelated matter requires his disqualification. Instead, in such cases, our precedent requires more than the fact of a prior representation to mandate the disqualification of a prosecutor. See *Lyons v. State*, 271 Ga. 639, 640 (522 SE2d 225) (1999) (conflict sufficient to require disqualification of district attorney's office after defendant's former lawyers were hired by district attorney must be more than "theoretical or speculative" (cleaned up)). Such a conflict exists when "the prosecutor previously has represented the defendant with respect to the offense charged, or has consulted with the defendant in a

---

[3] One of the matters in which the District Attorney represented Appellant resulted in Appellant's conviction for theft by receiving. The State agreed that this conviction would not be used against Appellant for any purpose in this case.

professional capacity with regard thereto." *Reed v. State*, 314 Ga.

534, 545 (878 SE2d 217) (2022) (cleaned up). See also Rules 1.9

("Conflict of Interest: Former Client") and 1.11 ("Successive

Government and Private Employment") of the Georgia Rules of

Professional Conduct found in Bar Rule 4-102 (d).[4] Although

Appellant relies on *Lemming v. State*, 292 Ga. App. 138 (663 SE2d

375) (2008), nothing in *Lemming* suggests that disqualification is

mandated where a prosecutor's prior representation of a defendant

---

[4] Rule 1.9 (c) provides:
A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
   (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
   (2) reveal information relating to the representation except as Rule 1.6 [Confidentiality of Information] or Rule 3.3 [Candor Toward the Tribunal] would permit or require with respect to a client.
Rule 1.11 (c) provides, in part:
Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:
   (1) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter[.]

13

is completely unrelated to the charges at issue. Rather, in *Lemming,* the Court of Appeals rejected the argument that members of the district attorney's office should have been disqualified from prosecuting the case after the district attorney, who had previously represented the defendant in unrelated matters, recused herself voluntarily. See id. at 139-142.

Here, the trial court found that the District Attorney's prior representations of Appellant were "indisputably unrelated" to the murder prosecution and that Appellant failed to show that any information the District Attorney may have obtained during his prior representation "could be used in any manner to the disadvantage of [Appellant] in the instant case." Our review of the record shows that the trial court's findings are amply supported by the evidence presented at the pretrial hearing, and accordingly, we conclude that the trial court did not abuse its discretion in denying the motion to disqualify. See *Neuman v. State*, 311 Ga. 83, 88 (856 SE2d 289) (2021) (an appellate court reviews a ruling on a motion to disqualify a prosecutor for an abuse of discretion, accepting the trial

14

court's factual findings if there is any evidence to support them).

4. Appellant next contends that the trial court abused its discretion in prohibiting him from questioning witnesses about other fires that occurred in 2017, arguing that such evidence would suggest that another person killed Smith. This issue arose when Appellant was cross-examining the fire investigator, and Appellant started to ask about two fires that had occurred at the homes of Southers and a defense witness after Appellant had been arrested for Smith's murder and remained incarcerated. Following the State's objection and outside the presence of the jury, the fire investigator testified that the fires were still under investigation and that no cause had been ruled out. Following this proffer, the trial court sustained the State's objection that the evidence was not relevant and ruled that Appellant could not question the fire investigator or other witnesses about these fires.

Appellant argues that the evidence was relevant because both homes had a connection to Smith, with Smith having been present in Southers's home the day before Smith died and Smith's cell phone

being found in the other home. Appellant asserts that because the State's theory of the case was that Appellant set the fire to cover up the murder of Smith, Appellant should have been able to ask about fires that occurred while he was incarcerated in order to suggest that another person was the actual perpetrator of the crimes for which Appellant was on trial. For the reasons we explain below, this claim fails.

Evidence that a person other than the defendant committed the crime is generally relevant under OCGA § 24-4-401 ("Rule 401") (defining "relevant evidence" as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). And relevant evidence is generally admissible. See OCGA § 24-4-402. In cases decided under the former Evidence Code, we held that for such third-party guilt evidence to be admissible, it "must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently

committed a crime of the same or similar nature." *Klinect v. State*, 269 Ga. 570, 573 (501 SE2d 810) (1998) (addressing claim that curtailment of cross-examination of witness about violent nature of co-defendant precluded defendant from showing that the co-defendant committed the murder). Since the enactment of the current Evidence Code, we have applied a reasonable-inference-of-innocence standard of admissibility when considering the relevance of such evidence under Rule 401. For example, in *Roberts v. State*, 305 Ga. 257, 260 (824 SE2d 326) (2019), we explained that we have "followed the general rule that, before testimony can be introduced that another person committed the charged crime, the proffered evidence must raise a reasonable inference of the defendant's innocence." In *Roberts*, we held that the appellant failed to show that evidence he sought to admit to establish that a third person had a motive to kill the victim was relevant under Rule 401 where the appellant did not identify the third person at trial and "offered nothing more than speculation and conjecture" that a third person

17

could have been involved in the murder. Id. at 260-262.[5] See also

*Payne v. State*, 314 Ga. 322, 333-334 (877 SE2d 202) (2022) (rejecting

claim that trial counsel was deficient in failing to investigate and

present evidence that another person was the perpetrator, on the

ground that proffered evidence was not relevant because it did not

raise reasonable inference of appellant's innocence); *Goins v. State*,

310 Ga. 199, 207-209 (850 SE2d 68) (2020) (applying reasonable-

inference-of-innocence standard and laying out Rule-401 relevance

---

[5] Neither Appellant nor the State asserts that *Roberts* and subsequent case law improperly utilized the reasonable-inference-of-innocence standard as a specialized relevance test under Rule 401 in the context of third-party guilt. Nor has either party argued that OCGA § 24-4-404 (b) ("Rule 404 (b)")applies to third-party guilt evidence, an issue we pretermitted in *Roberts*, 305 Ga. at 260. We recognize that there is not a consensus view among federal courts about whether Federal Rule of Evidence 404 (b) is applicable to the consideration of the admissibility of third-party guilt evidence. See Michael H. Graham, 3 Handbook of Federal Evidence § 404:5 (9th ed. Nov. 2023 update) (noting in context of evidence of third-party guilt that "the federal courts are in conflict as to whether [Federal Rule of Evidence] 404 (b) applies to a 'person' who is not also the defendant" and describing the various approaches taken by federal courts). See also *State v. Almanza*, 304 Ga. 553, 556-559 (820 SE2d 1) (2018) (explaining circumstances in which Georgia courts consider federal case law construing Federal Rules of Evidence in considering the meaning of our current Evidence Code). Given that neither Appellant nor the State has argued that we should change course in addressing third-party guilt evidence or that such evidence is governed by Rule 404 (b), we need not consider in this case whether Rule 404 (b) applies to third-party guilt evidence or whether the reasonable-inference-of-innocence standard for determining the relevance of such evidence is an appropriate standard under the current Evidence Code.

18

standard in addressing whether proffered third-party guilt was admissible).[6]

Here, the testimony that Appellant sought to elicit from the fire investigator and other witnesses does not raise a reasonable inference of Appellant's innocence. Rather, the proffered evidence — that two years after Smith's murder, some unidentified person set fire to two occupied dwellings, which dwellings had a tangential connection to Smith's murder — offered nothing more than "speculation and conjecture" that this unidentified person may have done so to hide evidence of that person's involvement in Smith's murder and the arson committed at the scene of the murder. *Roberts*, 305 Ga. at 261-262. The proffered evidence did not establish that arson was the cause of the 2017 fires, did not identify any

---

[6] In addressing the admissibility of evidence of third-party guilt, *Goins* and other cases have cited OCGA § 24-4-403 ("Rule 403"), which authorizes a trial court to exclude such evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In those cases, however, we were not asked to review a trial court's reliance on Rule 403 to exclude such evidence. See *Palmer v. State*, 318 Ga. 511 (899 SE2d 192) (2024); *Goins*, 310 Ga. at 207-208; *Moss v. State*, 298 Ga. 613, 616 (783 SE2d 652) (2016). We note here that the trial court did not address Rule 403's balancing test.

person who may have started the fires, and did not connect any specific person to the murder or arson charged in this case. In the absence of any nexus between the 2017 fires and a third party, the evidence does not raise a reasonable inference of Appellant's innocence. Thus, applying our precedent, the evidence was not admissible under Rule 401 to show another person committed the crimes for which Appellant was on trial. See *Goins*, 310 Ga. at 207-209 (no abuse of discretion in exclusion of evidence that appellant claimed was relevant to show that other people could have had motive to kill victim, where proffered evidence did not link any other person to the murder or raise a reasonable inference of appellant's innocence and thus failed to meet basic requirements for admissibility under current Evidence Code, including Rule 401); *Roberts*, 305 Ga. at 261-262. Accordingly, the trial court did not abuse its discretion in precluding Appellant from questioning the fire investigator and other witnesses about fires that occurred while Appellant was incarcerated.

5.    Appellant's final enumeration of error states that the trial

court abused its discretion in denying his motion for mistrial. However, Appellant failed to make his motion for mistrial contemporaneously with the complained-of testimony, and thus, this claim is not preserved for appeal.

Before trial, the State filed a notice of intent to present certain "bad-character" evidence, including evidence that Appellant boasted that he had committed murder in 1994 and had been found not guilty of that murder. The admissibility of this evidence was discussed at two pretrial hearings. During the second hearing, the trial court ruled, and Appellant agreed, that a witness's testimony about Appellant's own statements would be admissible under Rule 801 (d) (2) (A). See OCGA § 24-8-801 (d) (2) (A) ("Admissions by party-opponent. Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is . . . [t]he party's own statement . . . [.]"). Appellant, however, indicated he would object if a witness testified as to a belief that Appellant previously "got away" with murder.

During the direct examination of Williamson, who had been

21

incarcerated with Appellant, the prosecutor asked, "Did Mr. Pittman ever brag about anything concerning the crime?" Appellant did not object, and Williamson testified that Appellant had told him that Appellant had committed a murder in 1994 and had been found not guilty. According to Williamson, Appellant also said, "If you ever want to kill somebody and get away with it, go to Haralson County." Appellant did not object to or move to strike the testimony, nor did he move for a mistrial at that point. Instead, after the State concluded the direct examination, Appellant stated he needed to make a motion outside the presence of the jury. After the jury exited the courtroom, Appellant moved for a mistrial, contending that Williamson's testimony that Appellant said he had committed murder and been found not guilty violated the trial court's pretrial ruling and was "highly prejudicial." The State argued that the testimony was not in violation of the pretrial ruling, and the trial court denied the motion. The trial court later clarified that the basis for its ruling was that Williamson's testimony was admissible under Rule 801 (d) (2) (A).

(a) It is well settled that a motion for mistrial must be made as soon as the party is aware of the matter giving rise to the motion, and that the failure to promptly move for a mistrial fails to preserve the issue for appellate review. See, e.g., *Lee v. State*, 317 Ga. 880, 884-885 (896 SE2d 524) (2023) (holding that "it is well established that a motion for a mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion" and concluding that the denial of the mistrial motion was not preserved for appeal where motion was not made until day after witness had finished testifying (cleaned up)); *Coley v. State*, 305 Ga. 658, 661-662 (827 SE2d 241) (2019) (claim of error related to denial of mistrial following admission of bad-character evidence was not preserved for appeal where the motion was not made contemporaneously with the testimony at issue); *Burrell v. State*, 301 Ga. 21, 26 (799 SE2d 181) (2017) (where State's witness had emotional outburst on direct examination, defendant's motion for mistrial made after the defendant had completed the cross-examination failed to preserve the issue for review). Because Appellant did not object to the State's

question, which clearly was intended to elicit the testimony discussed at the pretrial hearings, and did not move to strike Williamson's answer, and then waited until after the prosecutor completed the direct examination to make a motion for mistrial, the claim that the trial court abused its discretion in denying a mistrial presents nothing for our review. See *Coley*, 305 Ga. at 662.

(b) Appellant also asserts summarily that the trial court abused its discretion in admitting Appellant's statement to Williamson because his statement about the 1994 murder did not relate to any of the charges in this case. However, Appellant failed to offer a contemporaneous objection to Williamson's testimony. And even during argument regarding the motion for mistrial, Appellant asserted a different ground as the reason the testimony was improper. At trial, Appellant argued that a mistrial should be granted because Williamson's testimony was "in direct contradiction with what the Court ordered earlier." However, as discussed above, the trial court's pretrial ruling was that any such statement made

24

by Appellant to a witness *was* admissible.[7] Under these circumstances, where the basis for the objection at trial and argument on appeal are different, this evidentiary claim is not preserved for ordinary appellate review. See OCGA § 24-1-103 (a) (1) (a trial court's ruling admitting evidence is ordinarily reviewable only when "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context"). Compare OCGA § 24-1-103 (a) ("Once the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal."); *Williams v. Harvey*, 311 Ga. 439, 447 (858 SE2d 479) (2021) (to preserve for appeal the violation of a definitive ruling on a motion in limine, a party must make a contemporaneous objection at trial).

Even though Appellant does not argue that the admission of

---

[7] Because Appellant does not argue on appeal that the trial court erred in relying on Rule 801 (d) (2) (A), we need not address this issue.

25

this statement should be reviewed for plain error, we generally review claims of evidentiary error under a plain error standard when a party raises an evidentiary error but fails to recognize that the error was not preserved for ordinary appellate review. See, e.g., *State v. Kenney*, 315 Ga. 408, 413 n.10 (883 SE2d 298) (2023) (noting that "we ordinarily review forfeited evidentiary arguments for plain error"); *Gates v. State*, 298 Ga. 324, 326-327 (781 SE2d 772) (2016) (adopting federal plain-error standard for reviewing claims of unpreserved evidentiary error under OCGA § 24-1-103 (d)). Therefore, we consider whether the trial court's decision not to strike Williamson's testimony about Appellant's statement constitutes plain error under the familiar standard set forth in *Gates*, 298 Ga. at 327 (to show plain error, appellant bears burden of showing error that is clear or obvious; that was not intentionally waived; that affected appellant's substantial rights, which generally means it must have affected the outcome of the trial court proceedings; and that seriously affected fairness, integrity, or public reputation of judicial proceedings). Appellant argues on appeal only

26

that the "statement about a purported murder in 1994 had nothing to do with the facts of this case" and that "the trial court should have excluded this testimony under [an] OCGA § 24-4-403 balancing analysis." His argument omits any substantive discussion about how the admission of this snippet of testimony affected the outcome of the trial. Given Appellant's cursory treatment of the claim of error and the overwhelming evidence of his guilt, including his own statements, we conclude that he has failed to meet his burden of making "an affirmative showing that the error probably did affect the outcome below." *Bozzie v. State*, 302 Ga. 704, 708 (808 SE2d 671) (2017) (cleaned up). Accordingly, there was no plain error. See *Williams v. State*, 315 Ga. 490, 496 (883 SE2d 733) (2023) (we need not analyze all prongs of plain error review where appellant fails to establish one of them).

*Judgment affirmed. All the Justices concur.*

27

BOGGS, Chief Justice, concurring.

I obviously agree with all that is said in the opinion. I write separately to note a concern I have with the Court's current practice of analyzing unpreserved evidentiary errors under the four-pronged plain error standard when the appellant does not assert plain error. We have not addressed whether the current Evidence Code requires us to apply plain error review to unpreserved evidentiary errors, and I am skeptical that it does. The source of plain error review of evidentiary errors is OCGA § 24-1-103 (d), which contains no command — but rather gives courts permission — to review evidentiary errors for plain error, providing, "Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court." We have expressly concluded that plain error review is statutorily required in the context of jury instructions. See *State v. Kelly*, 290 Ga. 29, 32 (718 SE2d 232) (2011). See also OCGA § 17-8-58 (b) ("Failure to object [to a charge to the jury] in accordance with subsection (a) of this Code section

28

shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section."); OCGA § 5-5-24 (c) ("[T]he appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not."). I would welcome the opportunity to consider, with briefing by the parties in an appropriate case, whether our current practice of conducting plain error review of unpreserved evidentiary issues when the appellant does not argue plain error is mandated by jurisprudential or statutory concerns.

I am authorized to state that Justice LaGrua joins this concurrence.

PETERSON, Presiding Justice, concurring.

I join the Court's opinion in full because it faithfully applies our precedent regarding the admissibility of evidence that a third party may have committed the crime with which the defendant is charged, and that precedent is not challenged here. I write separately to point out that at least some of that precedent may be wrong.

Division 4 of the Court's opinion rejects Pittman's claim that the trial court erred by refusing to admit evidence that someone else set fires in the relevant area while Pittman was in prison. Pittman sought to use that evidence to argue that whoever set those fires may have committed the arson-related crimes with which he was charged here. In rejecting his argument, the Court applies a rule developed under the old Evidence Code and that our precedent has previously carried forward into the current Evidence Code. But I am uncertain that this rule was correct even under the old code, and am even more skeptical that we have properly imported it into our current Evidence Code (and we have certainly never explained why that old rule should still apply under the current code).

Under the old code, we summarized this rule as follows:

> Certainly a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature.

*Klinect v. State*, 269 Ga. 570, 573 (3) (501 SE2d 810) (1998) (citations omitted). In setting out the test for admissibility, we cited only two Court of Appeals decisions. See id. (citing *Croom v. State*, 217 Ga. App. 596, 599 (3) (458 SE2d 679) (1995); *Bradford v. State*, 204 Ga. App. 568 (420 SE2d 4) (1992)). *Croom*, in turn, cited only *Bradford* on this point. See *Croom*, 217 Ga. App. at 599 (3). *Bradford* cited a treatise and three decisions of this Court. See *Bradford*, 204 Ga. App. at 569-570. But those decisions of this Court were all decisions reversing convictions on the ground that evidence of third-party guilt had been wrongfully excluded. See *Walker v. State*, 260 Ga. 737, 738-739 (1) (399 SE2d 199) (1991); *Henderson v. State*, 255 Ga. 687, 689 (1) (341 SE2d 439) (1986); *Butler v. State*, 254 Ga. 637, 639-

640 (332 SE2d 654) (1985). And none of those cases articulated a rule like the one *Bradford* applied; rather, they appear to have applied a lower bar to admission. See, e.g., *Walker*, 260 Ga. at 739 (1) (mere "evidence enough to raise a reasonable doubt as to the defendant's guilt in the minds of the jury, not evidence sufficient to convict someone else, would be enough to change the outcome of the case and to warrant reversal"); *Henderson*, 255 Ga. at 689 (1) (same); *Butler*, 254 Ga. at 640 ("the evidence as to [the third party] did tend to establish the *possibility* that [the third party] was responsible for committing the crimes[,]" and, therefore, "this evidence was relevant and admissible") (emphasis added).[8]

In any event, the language *Bradford* quoted from its chosen treatise began with language that may at first blush seem similar to

---

[8] Later in the opinion, *Bradford* also cited *Stephens v. State*, 261 Ga. 467, 468 (6) (405 SE2d 483) (1991), which held that the trial court erred by admitting a certified copy of the *defendant's* prior conviction because the State failed to offer evidence that established similarity and a logical connection between the independent crime and the crime for which the defendant was on trial. See *Bradford*, 204 Ga. App. at 570. But a case about the admissibility of evidence that the defendant had previously committed a different crime has no obvious relevance to whether the defendant can admit evidence that someone else committed the crime for which the defendant is being prosecuted.

our current OCGA § 24-4-403 ("Rule 403"): the "accused may introduce evidence tending to show that another person committed the crime with which he is charged . . . unless the probative value of the evidence is substantially outweighed by actual risk of undue delay, prejudice, or confusion." *Bradford*, 204 Ga. App. at 569 (quoting 22A CJS Criminal Law, § 729). But our old code contained no provision identical to our current Rule 403, and a leading Georgia treatise has observed that our Rule 403-equivalent approach under the old code was materially different and led to excluding more evidence than the federal rule would. See Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence: Comparing Georgia and Federal Rules 121-122 (6th ed. 2018).[9] In short, the only authority that did any actual analysis and upon which we relied in *Klinect* did not apply a rule of evidence that the General Assembly carried forward into our current code. See *Bradford*, 204 Ga. App. at

---

[9] That same treatise observed that Georgia cases decided under the current code regarding admissibility of third-party culpability have applied Georgia old code standards, and stated that "[f]uture decisions will determine whether Georgia will rely upon federal standards on this issue." Id. at 118-119.

569-570.

Nevertheless, we uncritically adopted *Klinect* as applicable under the current code. See *Moss v. State*, 298 Ga. 613, 616-617 (4) (783 SE2d 652) (2016) (citing the test in *Klinect*). And since then, it's been off to the races. See, e.g., *Roberts v. State*, 305 Ga. 257, 260-261 (3) (824 SE2d 326) (2019) (citing *Moss* and numerous old code cases to apply rule from *Klinect* under current code); *Palmer v. State*, 318 Ga. 511, 529 (5) (899 SE2d 192) (2024) (citing *Klinect*, *Moss*, and *Roberts*); *Payne v. State*, 314 Ga. 322, 333 (3) (g) (877 SE2d 202) (2022) (citing *Roberts* and other cases);[10] *Goins v. State*, 310 Ga. 199, 208 (6) (850 SE2d 68) (2020) (citing *Roberts* and *Moss*); *Hills v. State*, 306 Ga. 800, 803-804 (2) (a) & n.7 (833 SE2d 515) (2019) (citing *Roberts*); and *Elkins v. State*, 306 Ga. 351, 358 (2) (b) (830 SE2d 217) (2019) (citing *Roberts*, *Moss*, and old code cases).

In none of these cases did we do the kind of analysis that we

---

[10] Even if *Moss* and its progeny are wrong, *Payne*'s holding and analysis were correct, given that *Payne* was reviewing a claim of ineffective assistance of counsel, and the state of the law at the time (right or wrong) warranted rejection of that claim. See id. at 333 (3) (g).

34

have elsewhere held is required in determining whether an old code rule carries forward. One case has at least suggested that the *Klinect* rule is consistent with Rule 403. See *Roberts*, 305 Ga. at 260-261 (3). But the rule as we regularly apply it does not resemble the careful fact-specific, case-by-case determination that Rule 403 requires. Instead, it appears to approximate a categorical rule that evidence of third-party guilt must show a direct connection between the third party and the crime in order to survive Rule 403, even if an indirect connection could still show the possibility of third-party guilt.[11] Categorical rules of that sort did not survive the passage of the current Evidence Code; it is "clear that Rule 403 provides no authority for an appellate court to direct the exclusion of entire categories of evidence." *State v. Orr*, 305 Ga. 729, 738 (3) (827 SE2d 892) (2019) (citing *Olds v. State*, 299 Ga. 65, 76 (2) (786 SE2d 633) (2016) (explaining that the application of Rule 403 "calls for a

---

[11] Some of our cases could be interpreted as speaking of this rule in terms of Rule 401 relevance instead, which makes little sense. Of course evidence tending in an indirect way to show someone else might have committed the crime is *relevant*; it just might not have much probative value in the context of the case.

careful, case-by-case analysis, not a categorical approach"); *Williams v. State*, 328 Ga. App. 876, 879-880 (1) (763 SE2d 261) (2014) (discussing differences between Rule 403 and prior Georgia precedent on excluding evidence based on its prejudice)).

In short, it appears to me that we've uncritically imported an old code rule to the current code without the analysis we regularly require, and the current code justifications that we have actually suggested do not appear to match the rule's actual application. In an appropriate case, we should consider whether our case law is correct. In that event, we would also need to consider what, if any, approach federal courts and especially the Eleventh Circuit had taken as of 2011.[12] See *State v. Almanza*, 304 Ga. 553, 555-557 (2) (820 SE2d 1)

---

[12] This question is beyond the scope of this concurrence, but I'll offer a couple of observations. First, it's not clear that the Eleventh Circuit has a pre-2011 holding directly on point. See David S. Schwartz & Chelsey B. Metcalf, Disfavored Treatment of Third-Party Guilt Evidence, 2016 Wis. L. Rev. 337, 409 (2016) (discussing approaches about third-party guilt evidence, citing for Eleventh Circuit approach only *United States v. Johnson*, 904 FSupp. 1303, 1307 (M.D. Ala. 1995) ("Evidence that a person other than the defendant committed the crime would certainly be admissible if it was exculpatory and if it complied with the requirements of Rules 401 and 403.")). Other district courts within the Eleventh Circuit continued to cite *Johnson* as authority on this point after 2011. See, e.g., *Dorsey v. Hetzel*, 2013 U.S. Dist. LEXIS 154865

(2018).

I am authorized to state that Chief Justice Boggs, and Justice Warren, Justice Bethel, Justice McMillian, and Justice Pinson join in this concurrence.

---

at *33 (3) (a) (S.D. Ala. Sept. 6, 2013). Second, to the extent that our precedent has discussed Rule 404 (b) in the context of evidence of third-party guilt, the Eleventh Circuit has held that Rule 404 (b) does not apply to any person other than the defendant, such that evidence regarding the acts of other people are excludable only under Rule 403. See *United States v. Morano*, 697 F2d 923, 926 (11th Cir. 1983) ("Rule 404 (b) does not specifically apply to exclude this evidence because it involves an extraneous offense committed by someone other than the defendant."); compare, e.g., *Roberts*, 305 Ga. at 260-261 (3) (excluding the victim's character evidence on relevance grounds without deciding whether Rule 404 (b) applied); *Palmer*, 318 Ga. at 530 (5) (to the extent appellant attempted to show a third party's "participation in the murders based solely on the fact that he had recently committed a crime of the same or similar nature, the testimony that he sought to elicit was inadmissible character evidence" under Rule 404 (b) (cleaned up)); *Goins*, 310 Ga. at 207-208 (6) (discussing generally whether character evidence was admissible to support the defense theory that other people had a motive to kill the victim). Schwartz and Metcalf argue that the federal circuits are split on what rule to apply to evidence of third-party guilt, with some following a rule like ours, while others simply apply Rule 403 as they would to any other evidence. See Schwartz & Metcalf, supra, at 347-348, 358-359, 408-409. How we would go about deciding which conflicting line of caselaw to follow in the absence of Eleventh Circuit precedent is another open question on which I offer no thoughts today.

Decided April 30, 2024.

Murder. Haralson Superior Court. Before Judge Murphy.

*David D. Marshall*, for appellant.

*Jack Browning, Jr., District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Matthew B. Crowder, Assistant Attorney General*, for appellee.