**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 29, 2026**

# In the Court of Appeals of Georgia

A25A1628. HARRINGTON v. THE STATE.

HODGES, Judge.

A jury found Malique Harrington guilty of aggravated assault (OCGA § 16-5-21), possession of a firearm during the commission of a felony (OCGA § 16-11-106), and tampering with evidence (OCGA § 16-10-94); it found him not guilty of malice murder, felony murder, and two additional charges of possession of a firearm during the commission of a felony. The trial court denied his motion for a new trial, as

amended.[1] He now appeals,[2] arguing that the trial court erred in: (1) denying his pre-trial motion for immunity and (2) denying his motion for new trial, because the acquittals outlined above rendered repugnant the jury's verdict of guilt on the aggravated assault and possession of a firearm counts. For the reasons that follow, we affirm.

The record shows that following the shooting death of Jerry Clark, Harrington was indicted for the crimes catalogued above. Although Harrington acknowledged that he shot Clark, he contended that he had done so in self defense, and, prior to trial, moved for immunity from prosecution pursuant to OCGA § 16-3-24.2, arguing that his shooting of Clark was justified. At the immunity hearing, Harrington testified that Clark had bullied him in the past, and on the date at issue, pushed him, attacked him from behind, and kicked and punched him. After the fight ended, Harrington realized his wallet, keys, and phone were gone, but that he still had his firearm. Clark had walked away, but Harrington pulled his gun from his pocket, cocked it, and put it back

---

[1] The trial court also found, and the State conceded, that tampering with the evidence in the manner alleged in the indictment was a misdemeanor, rather than a felony. The trial court amended Harrington's sentence accordingly.

[2] Harrington filed a notice of appeal to the Supreme Court of Georgia, which transferred the appeal to this Court.

in his pocket because he wanted to get his things back but was "scared." He then walked over to where Clark was and asked for the return of his items, believing that "the fight was over." Harrington testified that his own gun was not visible, but that Clark "pull[ed] what look[ed] like — it was a bigger gun, I assume maybe a 9-mm from his pocket." Harrington pulled out his own gun and shot Clark, who fell backward, firing once into the air as he fell. Harrington fled. An eyewitness, however, testified that she heard Harrington ask for his phone, then, as Harrington and Clark were standing within arm's reach of one another, Harrington shot Clark. The witness testified that she did not see a gun in Clark's hand or anywhere on his person at the time Harrington shot Clark.

Harrington's pre-trial and trial proceedings were handled by different judges. The trial court (hereinafter, the "First Trial Court") conducted the evidentiary hearing on Harrington's immunity motion. From the bench, the First Trial Court indicated orally that it was "inclined to grant the motion[;]" after some discussion, the First Trial Court stated: "Grant the motion. The State has the right to appeal my decision, and they may." The First Trial Court then directed counsel to "[p]repare an order." This hearing took place on July 30, 2019. Both parties' appellate briefs aver

that the First Trial Court judge stepped down from the bench in April 2020, and it is undisputed that this judge never entered a written order.

Nearly a year after the immunity hearing, a different judge (hereinafter the "Second Trial Court") sent a letter to counsel for Harrington and the State, mentioning the first judge's resignation and oral ruling, noting that the First Trial Court had made no finding that Harrington had carried his burden by a preponderance of the evidence and, pertinently, that the First Trial Court had never entered a written order. The letter stated that the Second Trial Court would make the decision de novo, upon review of the immunity hearing transcript, and invited the parties' responses.

Harrington responded, referencing a "proposed order" that had "remained overlooked since October 1, 2019 when it was provided to the [First Trial] Court and to the State for review and signature[,]" and he urged the Second Trial Court to sign this order. Harrington appended to this response a copy of the proposed order.[3] The State filed a brief in opposition, asserting that a de novo review was in order.

---

[3] It appears from the record that some months after the immunity hearing, a superior court staff attorney e-mailed counsel for both sides asking about the proposed order, after which Harrington's counsel submitted a proposed order.

The Second Trial Court issued a written order denying Harrington's motion for immunity, noting that it was "unable to determine" whether the First Trial Court's judge did not sign because of "a change of heart, a reconsideration of the law[,] . . . or some other reason." The Supreme Court denied Harrington's application for interlocutory review, after which Harrington moved, inter alia, to set aside the Second Trial Court's immunity order. The Second Trial Court denied that motion. Harrington's case then proceeded to trial, verdict, and the instant appeal.

1. We note at the outset that Harrington's appellate brief fails to show how each enumerated error was preserved for review, and also fails to cite to the specific page numbers of the record or transcript that are essential to consideration of his enumerated errors. See Court of Appeals Rules 25 (a) (5) ("At a minimum, the appellant's brief *must include* . . . [a] statement of the case that . . . identifies how each enumerated error was preserved for review, with appropriate citations to the record.") (emphasis supplied), 25 (d) (1) (i) ("Each enumerated error *shall* be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration.") (emphasis supplied), and 25 (d) (2) (providing manner of citation to the record).

"Accordingly, if we have missed something in the record or misconstrued an argument, the responsibility rests with counsel." (Citation and punctuation omitted.) *Demps v. State*, 337 Ga. App. 657, n. 2 (788 SE2d 525) (2016).[4] Further, Harrington's brief, in several regards, offers only conclusory statements purporting to identify errors. These conclusory statements are unsupported by either legal argument or citation to relevant authority, in contravention of Court of Appeals Rule 25 (d) (1). "[M]ere conclusory statements are not the type of meaningful argument contemplated by our rules[;] . . . [as a result, some of Harrington's] arguments in this regard have been abandoned by his failure to provide citation to authority or meaningful argument and will not be addressed." (Citation and punctuation omitted.) *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014).

2. In a multi-part enumeration, Harrington argues that the First Trial Court's statement from the bench purporting to grant his immunity motion means that the unsigned, draft written order prepared by defense counsel "was final[.]" He contends that the oral ruling was "legally sufficient and binding," and that, for this and other reasons, the written order should be set aside. We disagree.

---

[4] The State's appellate brief likewise fails to provide citations to the record in accordance with our Rules. See Court of Appeals Rule 25 (b), (d) (2).

6

(a) It is well settled that, in general, a trial court's oral pronouncements are *not* binding, and its written order controls. As our Supreme Court has determined, an "oral order [is] neither final nor appealable until and unless it is reduced to writing, signed by the judge, and filed with the clerk[.]" *Hill v. State*, 281 Ga. 795, 798-799 (3) (642 SE2d 64) (2007); see *Titelman v. Stedman*, 277 Ga. 460, 461 (591 SE2d 774) (2003) (finding that "[w]hat the judge orally declares is no judgment until it has been put in writing and entered as such[,]" and quoting the Appellate Practice Act, OCGA § 5-6-31, which provides, "[t]he filing with the clerk of a judgment, signed by the judge, constitutes the entry of a judgment within the meaning of" the APA) (citation and punctuation omitted). "It is elementary that an oral order is not final nor appealable until and unless it is reduced to writing, signed by the judge, and filed with the clerk." (Citation and punctuation omitted.) *Ballard v. State*, 321 Ga. 352, 359 (5) (914 SE2d 793) (2025); see *Onyeka v. State*, 374 Ga. App. 504, 508 (2) (913 SE2d 377) (2025) (recognizing, where appellant asserted that an "orally pronounced [judgment notwithstanding the verdict that was] never memorialized in a written order" amounted to an acquittal, that, generally, "an oral ruling is neither final nor appealable until and unless it is reduced to writing"). "Moreover, until an oral pronouncement

7

is memorialized, the trial judge has broad discretion to amend, alter, or completely change his [or her] decision, and any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment." (Citation and punctuation omitted.) *Burns v. State*, 313 Ga. 368, 375 (3), n. 4 (870 SE2d 360) (2022).[5] The Second Trial Court did not err in finding that the First Trial Court's oral pronouncement was not binding.

(b) Harrington also argues that the Second Trial Court erred in reviewing his motion for immunity de novo. Here, however, although the Second Trial Court offered to hold another hearing if the parties so requested within 10 days of the date

---

[5] Harrington argues that a civil case, *Mondy v. Magnolia Advanced Materials*, 303 Ga. 764 (815 SE2d 70) (2018), provides that an oral ruling does equate to a final order. This reading is erroneous and incomplete. *Mondy* addressed the requirement of immediate compliance with an oral order by "the litigants" in the context of an oral contempt ruling, see id. at 774 (4) (d); yet the *Mondy* Court specifically recognized, in this context, that "while an oral ruling by a trial judge may require immediate compliance *by the person to whom it is directed*[,] . . . until an oral ruling is reduced to writing, signed by the judge, and filed by the clerk, it generally cannot be appealed." Id. at 772 (4) (b) (emphasis supplied). As the *Mondy* Court clearly provided, there is a difference between the requirement of immediate compliance by a *litigant*, which may be orally compelled from the bench, and that litigant's ability to *appeal* an order, which may not be accomplished until that order is reduced to writing. See id. at 772 (4) (b) (reiterating that until an oral pronouncement is memorialized, a trial judge has broad discretion to alter or "completely change" the decision); see also id. at 773 (4) (b) (finding that the written order "trump[s] any implications that might otherwise be drawn from the bare oral ruling" when that ruling is reviewed on appeal).

of its letter, nothing in the record indicates that either the State or the defense so requested or that any hearing was held. As a result, the Second Trial Court rendered its decision based upon a review of the transcript of the immunity hearing held before the First Trial Court. Pretermitting whether this was error, the Second Trial Court offered to hold another hearing and Harrington failed to seize that opportunity. It is well settled that "a party waives his right to challenge on appeal a ruling that his own procedure or conduct aided . . . in causing." (Citation and punctuation omitted.) *Mantooth v. State*, 303 Ga. App. 330, 336-337 (2) (693 SE2d 587) (2010) (finding that where the trial court asked defendant's counsel to make a proffer and counsel failed to do so, defendant could not complain of any error).[6]

---

[6] See generally *Pate v. State*, 364 Ga. App. 107, 108 (2), 109-111 (3) (874 SE2d 132) (2022) (finding that the defendant bears the burden at trial of showing he was entitled to immunity by a preponderance of the evidence; that on appeal, we review the evidence in the light most favorable to the trial court's ruling, accepting its findings of fact and credibility if any evidence supports them; and affirming denial of immunity even where trial court made no factual findings). Furthermore, Harrington does not argue on appeal that the Second Trial Court erred, on the merits, in finding he had failed to show entitlement to immunity by a preponderance of the evidence. Therefore, we do not address the issue. See *Pittman v. State*, 318 Ga. 819, 829 (5) (b), n. 7 (901 SE2d 90) (2024) (noting that the Supreme Court would not address argument not raised on appeal).

(c) Harrington contends, without citation to any evidence in the record, that the First Trial Court judge has now returned to the bench with senior status and that the Second Trial Court's order should be set aside so that the First Trial Court judge can sign the original proposed order. Harrington provides no argument or citation of authority addressing why, after the First Trial Court judge left the bench and had no authority to sign orders,[7] the Second Trial Court was barred or erred in rendering a decision in a case that remained pending and where no written order had been entered. This contention has been abandoned for the reasons explained in Division 1, and is meritless for the reasons outlined in Division 2 (a).

(d) Harrington next contends, in an argument that contains no citation to the record, that the second trial court's denial of the immunity motion "creates the appearance of forum shopping[.]" For the reasons outlined in Division 1, this contention of error has been abandoned. Further, we note that because the First Trial

---

[7] See generally *Triola v. Triola*, 299 Ga. 220, 221 (1) (787 SE2d 206) (2016) ("It is beyond all reasonable dispute that [the judge] had no authority to sign the . . . order after the effective date of his resignation[.]") (collecting cases); further, as the Second Trial Court found, once the judge of the First Trial Court judge returned with senior status, the chief judge had not sought her assistance with Harrington's case because no judge had been disqualified or otherwise could not serve. See OCGA § 15-1-9.1 (b) (2).

Court never rendered an appealable judgment and the Second Trial Court's written order is valid and binding for the reasons explained in Division (2) (a), this contention could not succeed in any event.

3. Harrington argues that the jury acquitted him of malice murder and felony murder and the related charges of possession of a firearm during the commission of a felony because it found he was justified in shooting Clark. According to Harrington, the jury's finding that he is guilty of aggravated assault and a related count of possession of a firearm during the commission of a felony is repugnant to his acquittals on the other charges. As a result, he argues that his convictions must be "reverse[d] and set aside." We disagree.

Repugnant verdicts "occur when, in order to find the defendant not guilty on one count and guilty on another, the jury must make *affirmative findings shown on the record* that cannot logically or legally exist at the same time. Where a jury renders repugnant verdicts, both verdicts must be vacated and a new trial ordered[.]" (Emphasis in original and supplied.) *McElrath v. State*, 308 Ga. 104, 111 (2) (c) (839 SE2d 573) (2020); accord *State v. Owens*, 312 Ga. 212, 216 (1) (b) (862 SE2d 125) (2021). The recognition of repugnant verdicts is an exception to Georgia's general

rule that inconsistent verdicts, "occur[ing] when a jury in a criminal case renders seemingly incompatible verdicts of guilty on one charge and not guilty on another[, . . . no longer] require reversal." (Citation and punctuation omitted.) *Presley v. State*, 358 Ga. App. 277, 280-281 (1) (855 SE2d 30) (2021). Georgia abolished the inconsistent verdict rule because if "truly inconsistent verdicts have been reached, the most that can be said is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt[.]" (Citation and punctuation omitted.) Id. More specifically,

> it is not generally within the court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts. . . . [A]ppellate courts cannot know and should not speculate why a jury acquitted on one offense and convicted on another offense.

(Citations and punctuation omitted). *McElrath,* 308 Ga. at 109 (2) (a).

In arguing that the verdicts at issue here are "repugnant," Harrington asserts that the repugnancy exception to the abolishment of the inconsistent verdict rule applies. The Supreme Court first recognized this exception in *Turner v. State*, 283 Ga.

17, 20-21 (2) (655 SE2d 589) (2008), finding that it applies only "when[,] instead of being left to speculate about the unknown motivations of the jury[,] the appellate record makes transparent the jury's reasoning why it found the defendant not guilty of one of the charges, [such that] there is no speculation[.]" (citation and punctuation omitted). In *Turner*, the defendant was accused of a shooting and charged with malice murder, felony murder (aggravated assault), and aggravated assault. Id. at 17. He admitted to shooting the victim, but argued the shooting was justified. Id. The jury found him guilty of felony murder and aggravated assault, expressly finding pursuant to the jury form, which contained pre-printed language related to lack of justification, see id. at 17, n. 2, that the shooting was *not justified*; however, the jury also found Turner not guilty of malice murder, "expressly finding pursuant to the jury verdict form supplied to it that [Turner] *had been justified* in his action." (Emphasis supplied.) Id. at 17. Because the jury's contradictory findings were explicitly revealed on the verdict form, the Supreme Court held that "there is no speculation" regarding the basis of the inconsistent verdicts, and found that the trial court erred in entering judgment on the guilty verdicts of felony murder and aggravated assault. Id. at 21 (2).

13

Harrington argues that *Turner* applies in his case, but fails to provide any citation to the record for the jury verdict form. The record, however, shows that Harrington's verdict form contained no language regarding justification, as his counsel acknowledged at the hearing on the motion for new trial, saying, "I have to concede we don't have the facts of *Turner* because we don't have the special verdict form[.]" As stated previously, *Turner*'s reasoning applies only if the appellate record clearly shows why the jury found found the defendant not guilty of some of the charges. 283 Ga. at 20-21 (2). "[T]here is no such verdict form in this case, and this Court will not engage in speculation or unauthorized inquiry regarding the jury's deliberations." (Citation and punctuation omitted.) *Presley*, 358 Ga. App. at 283 (2). We have also rejected factors other than the jury form as offering sufficient insight into the jury's rationale to find a verdict repugnant. In *Taylor v. State*, 327 Ga. App. 288 (758 SE2d 629) (2014), the defendant appealed his convictions for aggravated assault and possession of a firearm during the commission of a felony, arguing that these verdicts were inconsistent with not guilty verdicts for malice murder and felony murder. This Court found that, even where the trial court instructed the jury extensively on justification and where, during deliberations, the jury sent a note to the judge asking,

". . .'if we believe it's self defense, does that negate the charge of felony murder?'" this "did not expose the jury's rationale for acquittal and its inconsistency with the guilty verdicts." Id. at 290 (2). Like the *Taylor* Court, we "will not engage in speculation or unauthorized inquiry regarding [the jury's] deliberations." (Citation and punctuation omitted.) Id. The trial court did not err in denying the motion for new trial on this ground.

*Judgment affirmed. McFadden, P. J., and Pipkin, J., concur.*